LAMOREAUX *v.* EGGLESTON.

1. Continuance—Equity—Incompetency—Guardian.
A suit in equity, having been continued several times on a showing that complainant had become incompetent, was properly heard on defendant's request, without awaiting the appointment of a guardian, and against the objection of solicitors for complainant, who were unable to assure the court that any probability of complainant's improving existed, and declined to name any person to act as guardian in the suit, since complainant could have received no benefit from the appointment of a guardian, and the available testimony in his favor could be presented as well without such appointment.

2. Accounting—Equity—Landlord and Tenant.
It was not erroneous to allow defendant, on accounting, certain items for money loaned complainant and certain claims on a mutual account, not strictly arising out of the lease between complainant and defendant, but arising out of their mutual dealings in relation to the tenancy.

3. Pleading—Cross-Bill—Landlord and Tenant—Equity—Ac-
counting.

   Without a cross-bill filed by defendant, the court was author-
   ized, on the basis of the bill and answer, in adjudicating the
   mutual cross-claims arising out of a tenancy on shares.

Appeal from Kent; McDonald, J. Submitted April
10, 1912. (Docket No. 101.) Decided July 11, 1912.

Bill by Ambrose D. Lamoreaux against Melvin Eggle-
ston for an accounting and other equitable relief. From
a decree for defendant, complainant appeals. Affirmed.

*Adsit & Danhof*, for complainant.

*Rodgers & Rodgers*, for defendant.

Ostrander, J. The bill of complaint was filed Sep-
tember 28, 1908, was answered by defendant, and a repli-
cation to the answer was filed November 24, 1908. An
amended answer asking for affirmative relief was filed
October 21, 1909. The record does not make very clear
what was therereafter done beyond this, that an injunc-
tion was granted, and was later, and on October 12, 1908,
modified upon the motion of defendant to dissolve it.

At a session of the court held September 22, 1911, the
cause came on for hearing in open court as in a suit at
law, and thereupon counsel for complainant moved the
court for a continuance. In support of the motion, the
certificate and affidavit of a physician and the affidavit of
one of the solicitors for complainant were presented. The
court inquired if the complainant could be ready to pro-
ceed at the next term, and was answered that no one
could tell whether he would or would not be prepared,
but that it was the opinion of his counsel that he was
mentally incompetent. From the colloquy which followed
it appears that certain facts were accepted by court
and counsel as true. The court stated, among other
things, that the showing as to complainant's condition
was sufficient to support the conclusion that he was not

fit to come into court, but that the cause had gone over
from term to term on complainant's showing of a similar
condition, and there was nothing to indicate an improved
condition in the future. Upon the suggestion of com-
plainant's counsel that a guardian for complainant should
be appointed, the court offered to make the appointment
if a suitable person was named as guardian. Counsel de-
clined to suggest the name of any person. Thereupon
the cause proceeded. Counsel for complainant stated
they had nothing to offer. Defendant produced testimony.
A decree was entered dismissing the bill, and granting
relief under the answer and cross-bill. The amount de-
creed to be due defendant from complainant was $79.12.
Defendant was awarded costs. Complainant has ap-
pealed, and urges here that in proceeding to a hearing
the court abused discretion, that time should have been
allowed for the selection and appointment of a guardian,
and that upon the merits the decree is not warranted by
the pleadings and proofs.

There is no merit in the contention that a further con-
tinuance should have been ordered. It appears that com-
plainant was competent to begin the suit. His infirmity
came upon him on or before October 21, 1909, when he
was suffering from paralysis, and after which time his
condition became gradually worse. Assuming that he
was wholly incompetent to do business, or to testify as a
witness, and that he would never be in better health, the
conclusion is that, in so far as his case depended upon his
own testimony, it must inevitably fail. In so far as it
depended upon the testimony of others, no good reason
was given for not presenting the available testimony, with
or without the intervention of a guardian. The defendant
should not have been obliged, for an indefinite additional
period, to hold himself in readiness to try an issue ten-
dered by the complainant.

The litigation arose out of relations created by an oral
agreement, stated in the bill as follows:

"The said defendant should put in all the crops on said farm for the season of 1908; that defendant should have the use of one team of horses, the use of two cows, the use of the barn excepting such space as was reserved for the use of your orator, and the use of all the agricultural implements and tools in and upon said farm, and that he should also have the use of the house, excepting such rooms as were reserved to your orator; that said defendant should perform and pay for (if necessary) any and all the manual labor in sowing, cultivating, and harvesting the said crops, and to furnish one-half of the seed that was to be used for cropping the said land for the said season, and that the other half of said seed was to be furnished by your orator; that for and in consideration of the said work and labor of the said defendant in and upon the said farm, the said defendant and your orator were each to have one-half of all the crops raised on said farm during the said season, excepting the oat and hay crop, which your orator charges was to be divided as follows: One-third of said oat and hay crop to belong to said defendant, and two-thirds of said oat and hay crop to belong to your orator, that said defendant was to care for, keep, and provide at his own expense the necessary food for the said team and cows, and that the fruit raised on said farm was to be equally divided between said defendant and your orator, that your orator at the time of the making of said agreement was the owner of some bees and chickens on said farm premises, which were not covered by said agreement, but remained the exclusive property of your orator during the life of said agreement."

Defendant entered into possession of the land and cropped it for the year 1908. The bill prays, among other things:

"(b) That said defendant fully set forth a true and just account of all his acts and doings in respect to said agreement, and that an account may be taken under the direction of this honorable court of all and every of the said seed, materials, cash, and labor furnished by your orator at the request of the defendant.

"(c) That the several sums of money so found to be due to your orator by or from the said defendant, if any, be declared a lien upon the said standing corn and potatoes, and that the said corn and potatoes may be sold under the direction and order of this court, to satisfy the said

lien, rendering the surplus, if any, to the said defendant.

"(*d*) That the said agreement may be dissolved by the said court.

"(*e*) That the writ of injunction may be issued out of and under the seal of this honorable court, directed to the said defendant, and restraining him from in any way selling or disposing of the said corn and potatoes, and from interfering with and molesting the said complainant in the use and enjoyment of his said premises as hereinbefore set forth, and particularly from threatening and committing any injury or violence to the person of said complainant."

The modified injunction required defendant—

"To absolutely and entirely desist and refrain from selling, disposing, or using the share belonging to said complainant of the corn and potatoes raised and grown on the premises described in said bill of complaint during the year 1908, said share to be determined and said crop divided from time to time as the same shall be harvested, and from plowing and preparing said land and putting in crops for the season of 1909, and from interfering with or molesting the said complainant in the use of his said premises, and particularly from threatening to and committing any injury or violence to the person of said complainant until the further order of this court in the premises."

In his answer, defendant stated the agreement of the parties as follows:

"That said defendant was to have possession of the farm hereinbefore described, and was to cultivate the same in a good workmanlike manner during the season of 1908; that each of the parties hereto was to furnish one-half of all seeds that were sown or planted upon said farm during said season, and that each of the parties hereto was to have one-half of all crops grown upon said farm during the season of 1908, including fruit grown thereon, with the exception of hay, two-thirds of which was to be delivered to said complainant and one-third was to be the property of this defendant, and by the terms of said agreement said complainant was to furnish to this defendant, free of charge, three horses, and all the necessary farming tools to properly cultivate said farm, and also furnish the use of two cows, free of charge. The said

complainant also reserved a portion of the house which he occupies, and also a portion of the barn which he has occupied."

He prays that an accounting may be had of all the acts and doings of the complainant with respect to said agreement and with respect to all crops, fruits, and produce grown upon the land under said agreement, and of all seed, materials, cash and labor furnished by defendant or by complainant in relation thereto, and that defendant have a decree against complainant for all moneys found to be equitably due him under or because of the said agreement and on account of the failure of the complainant to fulfill any part of the same.

A contention of complainant is that the court considered and gave defendant a decree for certain items not growing out of or appertaining to the said agreement. I am not satisfied that the court was in error. It is true that certain items, such as borrowed money and a mutual account of the parties, were considered. Certain sums were allowed to defendant for money expended by him on account of the alleged default of complainant in doing what he had agreed in the contract to do. The whole account grew out of the relations of the parties and their dealings with each other in view of and with reference to the original contract. The proofs, in the absence of cross-examination of the defendant, are somewhat informal. Complainant's solicitors exercised their discretion in declining to take part in the proceeding and in reserving their objections for the attention of this court. Whether defendant might have had the relief afforded by the decree without having filed a cross-bill, or an answer in the nature of a cross-bill, is, in respect to the question now considered, immaterial. The court was warranted by both bill and answer in treating the case as one for the settlement of the dealings which the parties had with each other after the original agreement was entered into. The balance upon such settlement was determined and stated. It is immaterial, too, that the decree in form

dismisses the bill of complaint. Complainant declined to dismiss the bill. The court declined, properly, I think, to dismiss it on motion of defendant, if it was proposed to hear defendant at all on the merits. As was said by this court in *Wyatt* v. *Sweet*, 48 Mich. 539, 543 (12 N. W. 693):

"The case itself was a case of cross claims. The object of it was for each side to bring forward his demands and have them judicially liquidated and those on one side applied to compensate those on the other until a final balance should be obtained as due from defendant to complainant, or from complainant to defendant, no matter which, and for the court after ascertaining the true balance to proceed and close the controversy and do complete justice by ordering payment."

I find no reason for disturbing the decree, and it is therefore affirmed, with costs of this appeal to defendant.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and STONE, JJ., concurred. BLAIR and BIRD, JJ., did not sit.